IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LADDIE JUANITA GONZALES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:05cv480-C |
| | ) | (WO) |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.  Introduction

The plaintiff, Laddie Juanita Gonzales ("Gonzales"), applied for disability insurance

benefits pursuant to Title II of the Social Security Act,  42 U.S.C. §§ 401, *et seq.*, and for

supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C.

§ 1381, *et seq.*, alleging that she was unable to work because of a disability.  Her application

was denied at the initial administrative level.  Gonzales then requested and received a hearing

before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ also denied

the claim.  The Appeals Council rejected a subsequent request for review.  The ALJ's

decision consequently became the final decision of the Commissioner of Social Security

("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No.
103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social
Security matters were transferred to the Commissioner of Social Security.

now before the court for review pursuant to 42 U.S.C. § 405 (g) and § 1631(c)(3).  Pursuant

to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to entry of final

judgment by the United States Magistrate Judge.  Based on the court's review of the record

in this case and the briefs of the parties, the court concludes that the decision of the

Commissioner is due to be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. § 404.1520, §416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological
abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  Administrative Proceedings

Gonzales was 38 years old at the time of the hearing before the ALJ.  (R. 615.)  She is a high school graduate and has completed two years of college.  (*Id*.)  Gonzales' prior work experience includes working as a fast food worker and certified nurse's assistant.  (R. 626.)

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

Gonzales alleges that she became disabled due to carpal tunnel syndrome, gastroesophageal reflux disease, depression, anemia, endometriosis, sleep apnea, hypersomnolence, and pain, swelling, and arthritis in her hands, neck, back, and shoulder. (R. 183; Doc. No. 11 at pp. 4, 8, 11.) Following the hearing, the ALJ concluded that Gonzales has severe impairments of depression, degenerative disc disease, and carpal tunnel syndrome. (R. 48.) The ALJ found that Gonzales possesses the residual functional capacity to perform light unskilled work. (R. 55.) Next, the ALJ determined that Gonzales was able to perform her past relevant work as a fast food worker. (R. 52.) Accordingly, the ALJ concluded that the plaintiff was not disabled. (R. 57.)

### III.  The Plaintiff's Claims

As stated by Gonzales, she presents the following issues for the court's review:

(1)     Whether the ALJ failed as a matter of law by failing to address Ms. Gonzales' anemia, an impairment which causes limitation of function.

(2)     Whether the ALJ's reconsideration of the merits of Ms. Gonzales' prior application constitutes a de facto reopening.

(3)     Whether the ALJ erred by failing to find that Ms. Gonzales' endometriosis or hypersomnolence is a severe impairment.

(4)     Whether the ALJ erred by failing to properly refute the opinion of Dr. Ferrell.

(Doc. No. 11 at p.1.)

4

## IV.  Discussion

### A.  The Plaintiff's Complaints of Anemia

Gonzales contends that the ALJ failed to consider her anemia individually or in combination with her other impairments. Specifically, she asserts that the ALJ ignored medical evidence demonstrating that she suffers from chronic anemia with a hematocrit level in the lower 30% range.  Gonzales cites medical literature indicating that a healthy person with hematocrit levels in the lower 30% range "could possibly do light work – under comfortable environmental conditions" and that "what an anemic person can do in temperature extremes will obviously be less."  (Doc. No. 11, p. 6, *quoting* Morton, David A. III M.D., MEDICAL ISSUES IN SOCIAL SECURITY DISABILITY 7-3 (2003).)

Although the ALJ failed to discuss Gonzales' anemia in his analysis, this court cannot conclude that the ALJ erred as a matter of law.  Because the ALJ found that Gonzales was able to return to light work as a fast food worker, Gonzales' assertion that medical literature indicates that extreme temperatures may affect an anemic person's ability to work does not support her claim that her medical condition is disabling.  Nothing in the ALJ's determination indicates a finding that Gonzales should perform work in extreme temperatures.

More to the point, however, the ALJ is not at fault for not addressing an issue which Gonzales did not present to him.  Gonzales first alleged that she was unable to work due to anemia in her brief to this court.  (Doc. No. 11.)  Gonzales did not allege at any point in her

disability report or during the hearing before the ALJ that she suffers from anemia.  (R. 182-191, 613-625.)  Consequently, at this late date in the proceedings, Gonzales' assertion that the ALJ failed to discuss her anemia in his analysis is unavailing.

### B.  The Commissioner's Prior Decision

Gonzales asserts that the ALJ reexamined the merits of her prior application.  Specifically, she asserts that the ALJ's reference to medical evidence used in her prior application constitutes a de facto reopening of the Commissioner's prior decision.  The Commissioner argues that the ALJ's references to prior medical evidence was for illustrative purposes only and does not constitute a reopening of the previous application.[4]

The law in this circuit is well established that, "[a]s a general matter, district courts do not have jurisdiction over the Commissioner's refusal to reopen a claim, since such a refusal is not a 'final decision' within the meaning of § 405(g)."  *Cash v. Barnhart*, 327 F.3d 1252, 1256 (11th Cir. 2003); *Loudermilk v. Barnhart*, 290 F.3d 1265, 1268 (11th Cir. 2002).  There are two recognized exceptions to this general rule.

> [S]ubject matter jurisdiction to review the Commissioner's decision not to reopen a prior application exists in two limited circumstances: (1) a colorable constitutional claim is raised; or (2) the decision is reconsidered to any extent at any administrative level.  *Sherrod* [*v. Chater*], 74 F.3d [243,] 245 [(11th Cir. 1996)]; *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991).

*Loudermilk*, 290 F.3d at 1268.  *See also Califano v. Sanders*, 430 U.S. 99, 107-08 (1977)

---

[4]This issue is important, of course, because it affects the date upon which the Gonzales' disability, if any, began.

(Section 205(g) does not "authorize judicial review of alleged abuses of agency discretion in refusing to reopen claims for social security benefits" absent a colorable constitutional claim); *Hall v. Bowen*, 840 F.2d 777, 778 (11th Cir. 1987) (Commissioner's denial of a motion to reopen "subject to judicial review only if the merits of the closed disability application are actually examined, or if the claimant presents a colorable constitutional claim."); *Graham v. Bowen*, 786 F.2d 1113, 1114 (11th Cir. 1986) (Court is without jurisdiction to review ALJ's decision not to reopen prior applications unless [claimant] "presents a colorable constitutional claim."); *Cherry v. Heckler*, 760 F.2d 1186, 1189 (11th Cir. 1985).  Consequently, if Gonzales raises a colorable constitutional claim or the ALJ's decision was reconsidered at any administrative level, this court has jurisdiction to review the decision not to reopen the earlier application.  If, however, Gonzales fails to meet either one of these exceptions to the general rule, this court lacks subject matter jurisdiction and this matter is due to be dismissed.

Gonzales has not raised a colorable constitutional claim; therefore, this court need only decide whether the ALJ reconsidered the denial of Gonzales' previous application at any administrative level.   Gonzales asserts that the ALJ's references to medical records dated before September 26, 2001, constitute a de facto reopening of the prior application.  Specifically, she asseverates that the ALJ's following statements demonstrate a reopening of the prior application:

    (1)    Regarding the claimant's depressive disorder, the undersigned emphasizes that the claimant has sought infrequent treatment for

her psychological condition, and at one point was actually dismissed from Spectra Care's service because of her failure to attend therapy.  In the claimant's initial treatment with Spectra Care, she actually characterized her depression as "off and on". . . .  (R. 54.)

(2)     Ms. Gonzales "sought care from Spectra Care" first in "April 2000."  (R. 48.)

(3)     Ms. Gonzales was terminated from Spectra Care's "service in February 2001."  (*Id*.)

(4)     The objective clinical findings of record also do not corroborate the claimant's allegations, and further cement the fact that she possesses the residual functional capacity as described herein. In terms of the claimant's impairments, the Administrative Law Judge notes that the claimant's orthopedist in 1998 interpreted the claimant's lumber M.R.I. as showing no significant disc degeneration.  (R. 54.)

(Doc. No. 11, p. 7-8.)

The court has reviewed the ALJ's decision in its entirety and concludes that the references to Gonzales' medical history prior to September 2001 do not constitute a reopening of the prior application.  The Eleventh Circuit "'has suggested that the Secretary's final decision will be deemed reopened if the ALJ does not apply *res judicata* and bases an ultimate determination on a review of the record in the prior application.'" *Wolfe v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996), *quoting Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir. 1996).  It is obvious that the ALJ's references to Gonzales' treatment at Spectra Care from 2000 to 2001 and her visit to an orthopedist in 1998 were merely illustrative recitations of her medical history.  Thus, the ALJ's decision to deny benefits in this case was not

ultimately based on a review of the medical records in the prior application. Consequently, the ALJ's mere recitation of Gonzales' medical history is insufficient as a matter of law to constitute a reopening of the prior application.

Moreover, the ALJ emphasized that any references to medical evidence from Gonzales' previous applications did not constitute a reopening of her prior applications. Specifically, the ALJ stated:

> The claimant did not appeal the unfavorable decisions rendered in her prior claims and, absent good cause to reopen the claimant's previous applications, the determination made on September 26, 2001 stands as the final decision of the Commissioner on all matters related to the claimant's alleged disability through such date. As such, the period currently under adjudication begins September 27, 2001. Any reference made to medical evidence in conjunction with the claimant's prior applications does not constitute a reopening of any previous claim, and is strictly for illustrative purposes only. The Administrative Law Judge has evaluated the claimant's treatment in a longitudinal fashion to better describe the claimant's medical condition.

(R. 47.) Generally, an ALJ's express refusal to reopen an application indicates that there is no actual or de facto reopening of a prior application. *See Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003) (Where ALJ expressly denied claimant's motion to reopen her first claim, "there was no actual or de facto reopening of the final decision on the first application to serve as a basis for jurisdiction under 405(g).").

Based upon a review of the ALJ's determination, including the recitation of Gonzales' complete medical history, the court concludes that the ALJ did not reconsider the

merits of the prior determination.  Therefore, this court lacks subject matter jurisdiction to review the Commissioner's refusal to reopen Gonzales' prior application.

### C.  The Opinions of Medical Personnel

Gonzales complains that the ALJ failed to properly credit the conclusory opinions of her psychiatrist, Dr. Madeline Ferrell, and therapist, Ms. Karinne Greene, because they are "medically qualified" to give an opinion.  Specifically, Gonzales asserts that the ALJ improperly discounted her psychiatrist's opinion that she is "neurologically and orthopedically unable" to work.  (R. 578-79.)  She also contends that the ALJ erred in determining that Dr. Ferrell's findings should be given less weight because Dr. Ferrell is not a neurologist.  In addition, Gonzales asserts that the ALJ incorrectly found that a residual functional capacity form, which was completed by a therapist and reviewed by Dr. Ferrell, was not completed by an acceptable medical source.

In his analysis, the ALJ determined that the psychiatrist's and therapist's "opinions cannot be granted controlling weight because they are inconsistent with the record as a whole, are inconsistent with physician treatment notes, and are not fully rationalized (and in the case of Ms. Greene) is not from an accepted medical source."  (R. 55.)  The ALJ also found that the therapist's conclusions in the residual functional capacity form are not consistent with Dr. Ferrell's medical records and therapist's notes from Spectra Care.  (R. 56.)

The law is well-settled;  the opinion of a claimant's treating physician must be

accorded substantial weight unless good cause exists for not doing so. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11ᵗʰ Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11ᵗʰ Cir. 1985). However, the weight afforded to a physician's conclusions depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11ᵗʰ Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11ᵗʰ Cir. 1983).

In the instant action, Dr. Ferrell's and Ms. Greene's conclusory opinions are not supported by their own medical records. For example, Ms. Greene determined that Gonzales exhibited an extreme degree of impairment with respect to her ability to maintain attention and concentration for extended periods; however, progress notes indicate that Gonzales was responsive during group meetings and psychological evaluations and that she generally showed a good affect. (R. 562, 565-66, 570, 572-73.) Additionally, nothing in the treatment records supports the therapist's opinion that Gonzales' ability to understand, remember, and carry out simple instructions is extremely impaired. (R. 559-73, 576.) Thus, the court concludes that the psychiatrist's and therapist's opinion that Gonzales is unable to work is not supported by the medical evidence. After conducting an independent review of the record, the court concludes that the ALJ did not err as a matter of law in discounting the conclusory opinions of Dr. Ferrell and Ms. Greene.[5]

---

[5] The court notes that the ALJ is permitted to give less weight to Dr. Ferrell's determination that Gonzales neurological and orthopedic impairments are disabling. The opinion of a specialist is generally

### D.  The Severity of the Plaintiff's Impairments

The severity step is a threshold inquiry which allows only "claims based on the most trivial impairment to be rejected." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). Indeed, a severe impairment is one that is more than "a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987) (citing with approval Social Security Ruling 85-28 at 37a).

A physical or mental impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. § 1382c(a)(3)(c).  The plaintiff has the "burden of showing [her] impairment is 'severe' within the meaning of the Act." *McDaniel,* 800 F.2d at 1030 - 31 ("Unless a claimant can prove, as early as step two, that she is suffering from a severe impairment, she will be denied disability benefits.")

### 1.  Endometriosis

The medical records indicate that Gonzales underwent a laparoscopy at some point

---

entitled to more weight than the opinions of other non-specialists.  *See* 20 C.F.R. §§  404.1527(d)(5), 416.927(d)(5).  *See also Kerwick v. Comm'r of Social Security*, [No. 05-12724, Nov. 17, 2005] 2005 WL 3076594, *2 (11th Cir. 2005). Because Dr. Ferrell is a practicing psychiatrist, the ALJ did not err as a matter of law in determining that Dr. Ferrell's opinion regarding Gonzales' neurological and orthopedic impairments should be accorded less weight.

in 2002 and a total abdominal hysterectomy on or around September 19, 2002.[6]  (R. 495, 517.)  Thus, Gonzales no longer suffers from endometriosis.  The court notes that Gonzales first alleged that endometriosis prevented her from working in her brief to this court.  (Doc. No. 11.)  Gonzales did not state at any time during the hearing before the ALJ or in her disability report that she suffered from endometriosis.  (R. 182-191, 613-625.)  More importantly, nothing in the medical records demonstrates that Gonzales' physicians restricted her activities due to endometriosis at any time during the relevant time period.  Although medical records indicate that Gonzales complained of abdominal and pelvic pain on several occasions between 1999 and 2002,[7] there is no objective evidence demonstrating that Gonzales was routinely restricted from work activities between September 2001 and her surgery in September 2002.  Therefore, while medical records indicate that Gonzales complained of pain, there is no objective medical evidence in the record to support a conclusion that endometriosis prevented Gonzales from performing work during the relevant time period.  Consequently, this court cannot conclude that the ALJ's failure to find Gonzales' endometriosis as a severe impairment was unsupported by substantial evidence.

---

[6] Gonzales was scheduled for a diagnostic laparoscopy in June 1999 and March 2000; however, she cancelled her appointments due to insurance problems.  (R. 416, 419.)  Gonzales reported to the consultative psychologist that she underwent a laparoscopy in 2002.  (R. 517.)

[7] The court notes that, on several occasions when Gonzales reported abdominal and pelvic pain, she was treated for a urinary tract infection, vaginitis, or irritable bowel syndrome.  (R. 392, 394, 405-07, 413-14, 416, 418, 436.)  The medical records also indicate that she was treated for endometriosis at the Southeast Medical Center on September 12, 2000, and September 20, 2000, and at the Women's Healthcare Clinic on February 18, 1999, April 21, 1999, June 29, 1999, February 23, 2000, and November 8, 2000.  (R. 392-396, 405-07, 413, 416, 419-21, 495

2.    **Hypersomnolence**

Gonzales asserts that the ALJ failed to properly consider her hypersomnolence as a severe impairment.  In addition, she asserts that the ALJ failed to consider her inability to afford treatment for her sleep disorder.  The medical records demonstrate that on July 23, 2002, Gonzales presented to Dr. Michael J. Labanowski, a neurologist, reporting that she has been extremely sleepy since she was fifteen years old and that her sleep problem has progressively worsened.  (R. 472.)  Dr. Labanowski's impression was "severe excessive sleepiness . . . possibly . . . due to narcolepsy."  (R. 473.)  On August 20, 2002, Gonzales participated in a multiple sleep latency test.  (R. 475.)  Dr. Labanowski found that the results of the test indicated "severe pathological hypersomnulence with 2 REM onset periods" and noted that the results of the study "demonstrate very severe sleepiness  . . . and may be consistent with the diagnosis of narcolepsy."  (*Id.*)  He also noted that Gonzales had "2 other sleep problems that could be causing excessive sleepiness such as sleep apnea and periodic leg movements."  (*Id.*)  On September 9, 2002, Dr. Labanowski determined that Gonzales should initially receive treatment for sleep apnea and periodic limb movement disorder and prescribed a CPAP machine and Mirapex.  (R. 509.)  He determined that, if Gonzales' sleepiness persisted after three to four weeks of using the CPAP, he would prescribe additional medication.  (*Id.*)  On April 16, 2003, Dr. Sher M. Ghori, a neurologist, recommended that Gonzales follow up with Dr. Labanowski for her sleep apnea, periodic limb movement disorder, and severe hypersomnolence.  (R. 501.)  Thus, the medical records

demonstrate that Gonzales was diagnosed as suffering from sleep problems.

Although the ALJ did not specifically find that Gonzales' sleep condition was a severe impairment, it is clear that he recognized that Gonzales was diagnosed as suffering from a sleep disorder and that he considered her sleep problems in his analysis. The ALJ determined that Gonzales' sleep apnea and other sleep impairments were not severe because she failed to seek "consistent treatment for such impairments, and no doctor has opined that the claimant is functionally limited in any manner by a sleep disorder." (R. 52.) While the medical records demonstrate that Gonzales was diagnosed as suffering from hypersomnolence, nothing in the medical records demonstrates that Gonzales' physicians restricted her activities due to her sleep condition.[8] Given the state of the medical records and the plaintiff's failure to consistently seek treatment, this court therefore cannot conclude that the ALJ's failure to find Gonzales' hypersomnolence as a severe impairment was unsupported by substantial evidence.

Furthermore, the court concludes that Gonzales' assertion that the ALJ failed to consider her inability to afford treatment for this condition is unavailing. Certainly, poverty excuses non-compliance with prescribed medical treatment or the failure to seek treatment. *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988). However, Gonzales did not testify, and nothing in the medical records indicates, that she failed to pursue additional treatment for her

---

[8] The court notes that, although Gonzales alleges that her hypersomnolence causes her to sleep throughout the day and night, she testified during the hearing before the ALJ that she has difficulty falling asleep. (R. 624.)

15

sleep disorder due to her inability to afford treatment.[9] Consequently, Gonzales' contention that her financial condition prevented her from seeking treatment for her sleep problems is unavailing.

## V.  Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled.  The court will enter a separate final judgment affirming the decision of the Commissioner.

Done this 9th day of January, 2006.


        /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

_____

[9]During the hearing before the ALJ, Gonzales' lawyer asked her a series of questions about her problems with her hands (the carpal tunnel syndrome), her back and legs and her ability to sit or stand (R. 618-622).  Regarding these problems, her lawyer asked if she was "following up at any other doctor, clinic, anything like that?"  Gonzales responded, "Well, yes, sir, but I don't have insurance or anything now and it's made it hard, you know, my income."  This single response to her lawyer is insufficient to demonstrate that she has not pursued treatment because of her financial condition.  In fact, Gonzales' testimony is to the contrary; she pursued even though it was "hard."  Second, this testimony was in reference to problems other than her sleep problems.  Gonzales does not present any evidence that she failed to pursue treatment for her sleep problems due to her financial condition.